CLARE E. CONNORS #7936
United States Attorney
District of Hawaii

DANA A. BARBATA #9112
SYDNEY SPECTOR #11232
Assistant U.S. Attorney
Room 6-100, PJKK Federal Bldg.
300 Ala Moana Boulevard
Honolulu, Hawaii  96850
Telephone: (808) 541-2850
Facsimile: (808) 541-3752
Email:  Dana.Barbata@usdoj.gov
         Sydney.Spector@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| UNITED STATES OF AMERICA, | Civil No. 24-00353 |
|---|---|
| Plaintiff, | COMPLAINT |
| vs. | |
| KAILUA VILLAGE CONDOMINIUM ASSOCIATION; RON ZENTNER; CERTIFIED MANAGEMENT, INC., DBA ASSOCIA HAWAII; BENJAMIN WILLOUGHBY; BRUCE STERN; DEBORAH STERN; JACQUELINE J. FRAME; AND KONA NOW LLC, DBA KONA NOW REALTY AND KONA NOW HAWAII ISLAND RENTALS, | |
| Defendants. | |

## COMPLAINT

The United States of America ("United States") alleges as follows:

## NATURE OF THE ACTION

1. The United States brings this action to enforce Title VIII of the Civil Rights Act of 1968 (the "Fair Housing Act"), as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. §§ 3601–3631.

2. This action for injunctive relief and monetary damages is brought under 42 U.S.C. § 3612(o) on behalf of Gerritt Schaffer, who has paraplegia, and arises from Mr. Schaffer's attempt to purchase and reside at a condominium, Unit 205 of Kailua Village Condominiums, located at 75-5766 Kuakini Highway, in Kailua-Kona, Hawaii 96740 ("Kailua Village").

3. The United States alleges that certain Defendants[1] violated the Fair Housing Act by making housing unavailable to Mr. Schaffer and discriminating against him in the terms and conditions of housing on the basis of his disability[2] by refusing to grant him reasonable modifications for the toilet in Unit 205 and a temporary wheelchair ramp needed to access Unit 205, and by refusing to grant

---

[1] Only certain defendants are charged with certain conduct, as set forth in the allegations below.

[2] The Fair Housing Act uses the term "handicap," see 42 U.S.C. § 3602(h), but consistent with modern usage, the government uses the term "disability" in this Complaint, and such usage is intended to cover the term "handicap" as used in the Act.

2

him a reasonable accommodation for an accessible parking spot.  The United States further alleges that certain Defendants made discriminatory statements and interfered with Mr. Schaffer's right to enjoy his housing free from discrimination, in violation of Fair Housing Act.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. § 3612(o).

5. Venue is proper in this district under 42 U.S.C. § 1391(b) and 42 U.S.C. § 3612(o) because the events giving rise to the United States' claims occurred in this judicial district, and they concern or otherwise relate to real property located in this judicial district.

## PARTIES

6. Plaintiff is the United States of America.

7. Defendant Kailua Village Condominium Association, Inc. ("KVCA"), at all times relevant to this Complaint, had three members who made decisions and otherwise governed the common areas and parking spaces of Kailua Village. Kailua Village consists of 54 units, and has 68 parking spaces.

8. Defendant Ron Zentner, at all times relevant to this Complaint, was the property manager of Kailua Village and an employee of KVCA.

9. Defendant Certified Management, Inc., dba Associa Hawaii ("Associa"), at all times relevant to the Complaint, contracted with KVCA to manage Kailua Village.

10. Defendant Benjamin Willoughby, at all times relevant to the Complaint, worked for Associa as its Director of Operations for Hawaii County. In that capacity, he was an employee of Associa responsible for Kailua Village.

11. Defendants Bruce Stern and Deborah Stern (the "Sterns"), at all times relevant to the Complaint, were the owners and sellers of Unit 205.

12. Defendant Jacqueline J. Frame, at all times relevant to the Complaint, was the Sterns' real estate agent for the sale of Unit 205 to Mr. Schaffer.

13. Defendant Kona Now LLC, dba Kona Now Realty and Kona Now Hawaii Island Rentals, at all times relevant to the Complaint, was the employer of Defendant Frame.

## FACTS

*Mr. Schaffer Decides to Move to Hawaii*

14. Mr. Schaffer is a person with a disability within the meaning of the Fair Housing Act, 42 U.S.C. § 3602(h). He has paraplegia, caused by injuries resulting from an accident in 2016. His disability makes him unable to walk, and he uses a wheelchair.

15. Mr. Schaffer's physical disability is readily apparent. Additionally, Mr. Schaffer's paraplegia causes him to feel debilitating nerve pain.

16. In August 2021, while Mr. Schaffer was living in Oregon, he visited Hawaii. He instantly noticed that the warmer water and milder climate of Hawaii helped alleviate his pain. He began looking for a condominium or house that was affordable, accessible, and close to the ocean to facilitate his physical training for an Ironman triathlon. He continued his search for a suitable home in Hawaii after he returned to Oregon.

17. Mr. Schaffer thought he had found the ideal place when he found Unit 205 of Kailua Village.

### Kailua Village Design and Management

18. Unit 205 of Kailua Village is a dwelling within the meaning of 42 U.S.C. § 3602(b). At all times relevant to the allegations herein, Mr. Schaffer resided at Unit 205 with the intent to make it his permanent home.

19. At all relevant times, Unit 205 had a round-shaped toilet. Due to Mr. Schaffer's disability, his ability to release waste is impaired and he requires an oval-shaped toilet, which is a few inches longer than the round toilets that are standard in many bathrooms.

20. Unit 205 is located on the second floor. It is accessible via an elevator that opens up to a lower landing. The lower landing then has four steps going up

to an upper landing, where there are four units, including Unit 205. Thus, to access Unit 205 in a wheelchair, there must be a ramp or some other change to the four steps.

21. Kailua Village has an outdoor parking lot with 68 parking spaces. None are designated accessible parking for persons with disabilities. Owners have one parking space per unit, which is acquired by deed. Unit 205 is deeded parking space 64. There are four parking spaces owned by KVCA (spaces 35, 36, 37, and 38). At all times relevant to the allegations herein, parking space 35 was designated as a visitor parking space, and would provide sufficient space for a person who requires the use of a wheelchair to exit their vehicle on the left side. Parking space 64 does not have sufficient room on either side to allow someone to transfer from a vehicle to a wheelchair.

22. Although Mr. Schaffer was aware of the inaccessible features of Unit 205 at the time he entered into the contract to purchase Unit 205, he expected to handle these issues by making requests for reasonable modifications and accommodations upon moving in, as he had done at prior residences.

23. At all times relevant to this complaint, neither KVCA nor Associa had a written reasonable accommodations or modifications policy applicable to Kailua Village.

*Mr. Schaffer's Requests to Install a New Toilet in His Unit,
a Ramp Over the Stairs to His Unit, and an Accessible Parking Space*

24. On October 16, 2021, Mr. Schaffer entered into an agreement to buy Unit 205 of Kailua Village from the Sterns.

25. On October 19, 2021, Mr. Schaffer began residing at Unit 205 pursuant to an Early Occupancy Agreement with the Sterns. The Early Occupancy Agreement permitted Mr. Schaffer to live in Unit 205 for $75 per day, starting on October 19, 2021, until the anticipated close of escrow on November 30, 2021.

26. On October 19, 2021, the day he moved into Unit 205, Mr. Schaffer went to Lowes to purchase materials for a temporary ramp for the four steps to access Unit 205. Because there were no wheelchair ramps available at Lowes that day, Mr. Schaffer purchased two aluminum motorcycle ramps to use as a temporary ramp.

27. When Mr. Schaffer was attempting to set up the temporary ramp needed to access Unit 205, he was approached by Defendant Zentner, Kailua Village's property manager. Defendant Zentner made several concerning statements to Mr. Schaffer, such as referring to federal accessibility laws as "bullshit rules" and expressing the belief that Kailua Village did not need to comply with federal accessibility laws, as it was "grandfathered in." Defendant Zentner also told Mr. Schaffer that people in wheelchairs had previously considered moving to Kailua Village, but ultimately decided not to.

7

28. During this exchange, Mr. Schaffer requested an accessible parking space from with Defendant Zentner. The basis for the request was that parking space 64, which was deeded to Unit 205, was too narrow for Mr. Schaffer to exit from the side of his vehicle with his wheelchair.

29. On October 19, 2021, after the exchange between Mr. Schaffer and Defendant Zentner, Defendant Zentner emailed members of KVCA and Defendant Willoughby, an employee of Associa (the management company), to relay information about the exchange. The email states, in part: "I mentioned that other people in [the] past had problems in [the] building using wheel chairs [sic] and chose not to buy into the building. Probably not the best thing to say to him but I was just being honest." In the email, Defendant Zentner claimed the temporary ramp Mr. Schaffer was attempting to use was dangerous.

30. In response, Defendant Willoughby wrote that Mr. Schaffer needed to make accommodation requests in writing, and that he had a template drafted by an attorney showing the requirements for accommodation requests. KVCA Member Susan Winn responded, suggesting that they serve the "prospective new owner with the legal opinion and try to discourage the sale." KVCA Member Winn also expressed concerns about potential liability related to the temporary ramps.

31. Mr. Schaffer was informed, through his realtor, that he was required to make accommodation requests in writing, and did so, in an email to his realtor

on October 22, 2021. His realtor emailed the requests for accessible parking and a ramp to Defendant Frame.

32.  On October 22, 2021, KVCA Member Winn emailed other KVCA Members and Defendant Willoughby that Mr. Schaffer had submitted a written request for accessible parking and a ramp. The email expressed KVCA Member Winn's view that Mr. Schaffer, as a tenant, had to submit such requests through the Sterns, the owners.

33.  On October 23, 2021, Mr. Schaffer orally asked Defendant Deborah Stern if he could replace the toilet in Unit 205 at his own expense with an oval-shaped toilet, as his disability prevented him from using the round one that was in place. Based on advice from Defendant Frame, the Sterns denied Mr. Schaffer's request to replace the toilet. Specifically, Defendant Frame incorrectly advised the Sterns that a provision of the Early Occupancy Agreement prohibiting alterations meant that Mr. Schaffer was not entitled to the reasonable modifications required by federal disability laws.

34.  On or about October 24, 2021, Mr. Schaffer emailed his written requests for a temporary ramp and accessible parking spot to the Sterns, who forwarded Mr. Schaffer's requests to KVCA Member Winn.

35.  On October 24, 2021, KVCA Member Stephanie Smedes emailed other members of KVCA and Mr. Willoughby suggesting that Mr. Schaffer be

9

informed of an expensive upcoming plumbing project.  The email stated, "Perhaps if [Mr. Schaffer] knows that [the project] is coming up . . . he may be more reluctant to purchase here.  However, by the sound of his last letter, I could see him construing this as not just appropriate information, but as a fabrication to stop him from moving in.  So, not 100% sure how to present this, but do wonder if he knows this, and if it might impact current decision making on his part."  KVCA Member Smedes went on to say that she believed all new potential owners should be informed.  However, based on information and belief, no other persons buying around the relevant time period were informed of the upcoming project before the close of escrow.

36.     On October 25, 2021, KVCA Member Winn responded to Smedes that she had informed Defendant Frame about the project and asked that she share it with Mr. Schaffer.  KVCA Member Winn's email also stated that she had reminded Defendant Frame that any changes inside the unit would need KVCA's approval.

37.     On the same day, KVCA Member Winn and another KVCA member went to Mr. Schaffer's unit, unannounced.  KVCA Member Winn brought a 10-page template contract for installing permanent modifications, which she had received from Defendant Willoughby.  KVCA Member Winn incorrectly informed Mr. Schaffer that a permanent ramp would not be feasible, based on the Americans

10

with Disabilities Act standards and the County of Hawaii's Uniform Fire Code. Finally, KVCA Member Winn told Mr. Schaffer that he had to pick up and stow his temporary ramp each time he used it.  KVCA knew or should have known that such a requirement was difficult and dangerous for Mr. Schaffer.  Imposing this requirement effectively denied Mr. Schaffer the ability to use the temporary ramp to access his unit.  None of the residents of the units on the same level as Unit 205 had ever complained about the ramp.

38. Even though KVCA owned an available parking space with side access that would have met Mr. Schaffer's needs (space #35) and could have assigned it to Mr. Schaffer, Defendants never offered Mr. Schaffer this parking space or any other space that would meet his disability-related needs.  Defendant Willoughby incorrectly advised KVCA that it was not obligated to provide accessible parking.

39. Because Mr. Schaffer could not enter his vehicle when there was a car parked in the space to the left, on approximately five occasions, he had to sit inside his house and wait until the car on the left exited before he could use his vehicle.

40. Mr. Schaffer ultimately managed on his own to arrange a parking space swap with another owner who owned a parking spot with larger clearance on the side that would permit Mr. Schaffer to transfer between his car and his wheelchair.  Neither KVCA nor Associa assisted with this process in any way.

11

41. After living in Unit 205 for approximately nine days, Mr. Schaffer concluded that Kailua Village would not provide him with an accessible residence. He could not use the bathroom in Unit 205 to relieve himself, and had been informed by the Sterns that he would not be permitted to change the toilet until over a month later (at the close of escrow). Further, agents of KVCA and Associa had consistently blocked his attempts to make his unit and parking space accessible, and had made various remarks to him that made it clear that he, as a person with a disability, was not welcome.

42. On October 28, 2021, Mr. Schaffer notified Defendant Deborah Stern that he was moving out of Unit 205. He stated, "Due to the lack of communication and the unwillingness to allow me to make the necessary changes to live a normal life. I am moving out of the condo . . . ."

43. On November 4, 2021, Mr. Schaffer withdrew his offer to purchase Unit 205.

44. Mr. Schaffer's experience with the Defendants caused him to suffer significant stress and anxiety. Not only did he lose his opportunity to purchase Unit 205, but he lost his desire to buy a home in Hawaii. His housing situation became unstable and he was unable to complete his coursework, as part of a degree he was pursuing through virtual learning, causing him to lose his financial aid and putting his eligibility for a vocational program in jeopardy. Additionally, Mr.

Schaffer suffered emotional and medical repercussions from having to live in his vehicle when he became homeless after moving out of Unit 205.

## HUD ADMINISTRATIVE PROCESS

45. On June 2, 2022, Mr. Schaffer timely filed a complaint with the United States Department of Housing and Urban Development ("HUD").

46. Pursuant to 42 U.S.C. § 3610(a) and (b), the Secretary of HUD conducted and completed an investigation of the complaint, attempted conciliation without success, and prepared a final investigative report. Based upon the information gathered in the investigation, the Secretary, pursuant to 42 U.S.C. § 3610(g)(1), determined that reasonable cause existed to believe that illegal discriminatory housing practices had occurred.

47. On December 15, 2023, the Secretary issued a Charge of Discrimination, pursuant to 42 U.S.C. § 3610(g)(2)(A), charging the above-named Defendants with engaging in unlawful discrimination in violation of the Fair Housing Act.

48. On December 18, 2023, Mr. Schaffer elected to have the claims asserted in the HUD Charge resolved in a civil action pursuant to 42 U.S.C. § 3612(a).

49. On December 19, 2023, an Administrative Law Judge issued a Notice of Election to Proceed in United States Federal District Court and terminated the administrative proceeding on Mr. Schaffer's complaint.

50. Following this Notice of Election, the Secretary of HUD authorized the Attorney General to commence this civil action pursuant to 42 U.S.C. § 3612(o).

## CAUSE OF ACTION
### (Fair Housing Act Violations)

51. The United States realleges and incorporates by reference herein the allegations contained in Paragraphs 1 through 50 as if set forth here in full.

52. By the conduct described in the foregoing paragraphs:

   a. Defendants KVCA, Zentner, Associa, and Willoughby discriminated against Mr. Schaffer based on his disability when they refused to grant Mr. Schaffer's request for a reasonable modification and a reasonable accommodation, specifically a temporary ramp and accessible parking, thereby making housing unavailable to Mr. Schaffer and discriminating against him in the terms, conditions, and privileges of the sale or rental of Unit 205, and in the provision of services and facilities in connection with Unit 205, in violation of 42 U.S.C. § 3604(f)(1)(A), (f)(2)(A), (f)(3)(A), and (f)(3)(B).

   b. Defendants Frame, Kona Now and the Sterns discriminated against Mr. Schaffer based on his disability, when they refused to grant Mr.

Schaffer's request for a reasonable modification, specifically an accessible toilet, thereby making housing unavailable to Mr. Schaffer and discriminating against Mr. Schaffer in the terms, conditions, and privileges of the sale or rental of Unit 205, and in the provision of services and facilities in connection with Unit 205, in violation of 42 U.S.C. § 3604(f)(1)(A), (f)(2)(A), and (f)(3)(A).

   c. The United States further alleges that Defendants KVCA and Mr. Zentner made discriminatory statements with respect to the sale or rental of a dwelling to Mr. Schaffer that indicated a preference, limitation, or discrimination based on disability, or an intention to make any such preference, limitation, or discrimination, in violation of the Fair Housing Act, 42 U.S.C. § 3604(c).

   d. The United States further alleges that Defendants KVCA and Zentner interfered with Mr. Schaffer's right to enjoy his housing free from discrimination, in violation of the Fair Housing Act, 42 U.S.C. § 3617, by attempting to discourage Mr. Schaffer's purchase of Unit 205.

53. As a result of Defendants' discriminatory conduct, Mr. Schaffer is an "aggrieved person" as defined in 42 U.S.C. § 3602(i) and has suffered damages.

54. The discriminatory actions of the Defendants were intentional, willful, and taken in disregard of Mr. Schaffer's federally protected rights.

## **PRAYER FOR RELIEF**

WHEREFORE, the United States prays that the Court enter an ORDER that:

1. Declares that Defendants' conduct as set forth above violates the Fair Housing Act;

2. Enjoins Defendants, their agents, employees, successors, and all others in active concert or participation with any of them, from discriminating against any person because of disability in any aspect of the sale, rental, use, or enjoyment of a dwelling;

3. Orders Defendants to take such affirmative steps as may be necessary to restore, as nearly as practicable, Mr. Schaffer to the position he would have been in but for the discriminatory conduct;

4. Orders Defendants to take such actions as may be necessary to prevent the recurrence of any discriminatory conduct in the future and to eliminate, to the extent practicable, the effects of their unlawful conduct, including implementing policies and procedures to ensure that no applicants or residents are discriminated against because of disability; and

5. Awards monetary damages to Mr. Schaffer as authorized by 42 U.S.C. §§ 3612(o)(3) and 3613(c)(1).

//

//

//

//

The United States further prays for such additional relief as the interests of justice may require.

Respectfully submitted this 19th day of August 2024.

CLARE E. CONNORS
United States Attorney
District of Hawaii

      /s/ Dana A. Barbata
By_____
  DANA A. BARBATA
  Assistant U.S. Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA